Roden v. Kendrick 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-309-CV

        GEORGE B. RODEN, ET AL.,
                                                                                       Appellants
        v.

        JANET KENDRICK, ET AL.,
                                                                                       Appellees
 

From the 19th District Court
McLennan County, Texas
Trial Court # 93-1825-1
                                                                                                    

O P I N I O N
                                                                                                    

          Appellees, Janet Kendrick and others (hereafter Appellees), include some but not all of the
members of the General Association of Branch Davidians, Seventh Day Adventist Church
(hereafter General Association). They brought this suit against appellant George Roden and other
unknown parties seeking to declare certain items of property, both real and personal, to belong
to the General Association. Roden counterclaimed for a declaratory judgment that the contested
items of property actually belonged to an organization of which he was president, the Branch
Davidian Seventh Day Adventist Association (hereafter BDSDAA). Roden also counterclaimed
for damages resulting from the alleged burning of BDSDAA property, defamation of the BDSDAA
name, and theft of his own personal property.
          Paul Fatta intervened in the action, claiming that some of the contested items of personal
property belonged to him. Fatta entered into a settlement agreement with Appellees, which the
court accepted when it rendered judgment in favor of Appellees in the main cause.
          Amo Paul Bishop Roden (hereafter Bishop) intervened as a member of the BDSDAA, as
an alleged trustee of the disputed property, and as the possessor of a power of attorney to act on
the behalf of Roden. Contending that she was a qualified representative of the BDSDAA, Bishop
argued that she was entitled to possession although not ownership of the property.
          A hearing was held on June 23, 1994, at which Appellees and Bishop appeared, but Roden
did not. The record indicates the only action taken at the hearing was the trial court's rendition
of its declaratory judgment, declaring the disputed items of property to belong to the General
Association, and the court's acceptance of the settlement agreement between Fatta and the General
Association. The court's final declaratory judgment was signed and filed on September 2, 1994. 
Roden and Bishop each then brought their appeals. 
          The facts giving rise to this suit are complex, but a proper disposition of these appeals does
not require a thorough rendition of them. It is sufficient to relate that a religious organization
known as the Branch Davidians has owned since the 1950s a 77.86 acre tract of land near Elk,
Texas, commonly referred to as Mt. Carmel. Ever since the Branch Davidians arrived at Mt.
Carmel their organization has been beset with internal power struggles. Considering the history
relevant to this appeal, in 1984 Roden, according to his pleadings, called for a presidential election
and won with a majority of the votes. At and before this time, Roden and another member of the
group, Vernon Howell, were vying for supremacy within the organization. When Roden gained
control over Mt. Carmel in 1984, Howell moved himself and a number of "followers" to a camp
somewhere near Palestine, Texas. In 1988, Howell and several of his followers returned to Mt.
Carmel and, after a gun battle, forced Roden off the land.
          Roden then returned to his hometown of Odessa, Texas, where he killed a man. At his
trial, he was found not guilty by reason of insanity and was interned in a state mental hospital. 
He has been a resident of state mental hospitals ever since.
          With the lack of any imminent threat from Roden, Howell exercised virtually complete
control over the group until the infamous raid in 1993 of Mt. Carmel by federal agents from the
Bureau of Alcohol, Tobacco, and Firearms. After the April 19, 1993, fire which consumed Mt.
Carmel had been extinguished, some of the surviving members of the Branch Davidians, now
dispossessed of their property, asked the court to declare the personal property present at Mt.
Carmel, and Mt. Carmel itself, to belong to them so they could regain possession. Realizing that
Roden would contest their ownership of the property, the suit for declaratory judgment was
brought against him and any other unknown parties who would contest their claim.
          Through ten points of error Roden argues: (1) the trial court erred in denying his petition
for habeas corpus ad testificandum; (2) the trial court erred in failing to honor his request for a
jury hearing; (3) the court erred in finding the General Association to own Mt. Carmel when the
BDSDAA is the rightful owner; (4) the trial court erred in permitting Appellees to present their
case in court because they failed to appear with a president and three trustees of the association's
property, as is required by the bylaws for the BDSDAA; (5) the court failed to address Roden's
cross-claim for damages resulting from Appellees' alleged burning of BDSDAA property,
defamation of the BDSDAA's name, and theft of Roden's personal property; (6) the court erred
in failing to recognize Roden as president of the BDSDAA; (7) the property settlement negotiated
by the General Association's attorney, Gary Coker, and Fatta was void because Coker did not
represent the true owner of the property, the BDSDAA;


 (8) judgment should be rendered on
appeal in favor of Roden and fees should be assessed against Appellees; (9) a motion filed by one
Clive Doyle to identify the members of the General Association was meaningless because the
BDSDAA, not the General Association, owned the disputed property;


 and (10) since Roden's
father, Benjamin, a former president of the BDSDAA when it possessed Mt. Carmel, appointed
him as his eventual successor, Roden is, according to the BDSDAA's by-laws, the only party to
rightfully represent the present ownership of Mt. Carmel.
          Rule 52(a) of the Texas Rules of Appellate Procedure provides:
In order to preserve a complaint for appellate review, a party must have presented
to the trial court a timely request, objection or motion, stating the specific grounds
for the ruling he desired the court to make if the specific grounds were not apparent
from the context. It is also necessary for the complaining party to obtain a ruling
upon the party's request, objection or motion. If the trial judge refuses to rule, an
objection to the court's refusal to rule is sufficient to preserve the complaint. It is
not necessary to formally except to rulings or orders of the trial court.

Tex. R. App. P. 52(a).
          We have examined the record thoroughly and have found only one document in which
Roden complained about the actions of the trial court in this particular case. It is his Notice of
Appeal filed on June 29, 1994, and apparently overruled by operation of law. It reads in full and
unedited:
TO THE COURT:
Defendant hereby gives notice of appeal to declaratory Judgment and sell of
defendants assets.
Thanks to Gary Coker that scrullous turd son of a bitch for not giving me notice
of said hearing. You did say "George you know how lawyers are" You bet Gary.
Carter vs. Clark 669 F2D 228 ( 5th ircuit 1980) " All true and correct"

Rule 52(a) requires that any errors allegedly made during the course of litigation be objected to
so that the court will be provided the opportunity to remedy the error. The failure to so object will
waive the complaint on appeal. Lemons v. EMW Mfg. Co., 747 S.W.2d 372, 373 (Tex. 1988) (per
curiam). In his Notice, Roden failed to apprise the trial court of any errors about which he
intended to complain on appeal. Therefore, all of his complaints on appeal have been waived. 
His ten points of error are overruled.
          Bishop took greater care to raise her complaint to the trial court before bringing her appeal. 
In her sole point of error, which she raised in a Motion to Correct Judgment filed September 16,
1994, she argues the trial court erred by including in its final written judgment two items of
property that the court did not award to Appellees when it rendered judgment at the hearing on
June 23.
          A rendition is the judicial act by which the court settles and declares the decision of the law
upon the matters at issue. Comet Aluminum Co. v. Dibrell, 450 S.W.2d 56, 58 (Tex. 1970). A
judgment is "rendered" when the decision is officially announced either orally in open court or by
written memorandum filed with the clerk. Samples Exterminators v. Samples, 640 S.W.2d 873,
875 (Tex. 1982); Bakali v. Bakali, 830 S.W.2d 251, 254 (Tex. App.—Dallas 1992, no writ). 
Entry of a written judgment is a ministerial act reflecting the court's action. Bakali, 830 S.W.2d
at 254.
          The trial court rendered judgment on June 23, 1994, when it pronounced:
The personal property listed on "Inventory of Property Removed to Coker Farm," and on
our list "Mike Walter A-1 Auto Parts, Elm Mott, Texas," is the property of the [General
Association]. Such property is not the property of George Roden and is not the property
of Amo Paul Bishop Roden.




The Declaratory Judgment signed by the trial court on September 2, 1994, awarded a bus, some
trucks, and some trailers that were located at Mt. Carmel to the General Association. The
judgment rendered on June 23 did not include these items. Bishop complains the court was not
at liberty to award these items to the General Association because the judgment rendered June 23
was final and any judgment issued subsequent to it needed to conform to it. See Cook v. Cook,
888 S.W.2d 130, 131 (Tex. App.—Corpus Christi 1994, no writ) ("If the written order does not
comport with the judgment rendered, the parties are entitled to have the order reformed to
accurately reflect the action taken by the trial court.")
          Rule 329b(d), however, grants the trial court plenary power to vacate, modify, correct, or
reform its judgment until thirty days after the judgment is signed. Tex. R. Civ. P. 329b(d); see
Cook, 888 S.W.2d at 131. By operation of Rule 329b(d), any oral rendition of the judgment, or
unsigned written memorandum filed with the clerk, is subject to revision by the trial court within
thirty days after the written judgment is signed. Cook, 888 S.W.2d at 132. Therefore, to the
extent that there is a discrepancy between the judgment rendered on June 23 and the judgment
signed on September 2, the signed judgment has priority because it acted as a permissible
modification of the judgment previously rendered. See id. Bishop's sole point of error is
overruled.
          As all the points of error presented by Roden and Bishop are overruled, the judgment is
affirmed. 


                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed August 23, 1995
Do not publish